IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MARIA FERNANDA VELASCO HURTADO; LUIS FERNANDO CHULCA CHILUISA; J.C.V., a minor, and V.C.V., a minor, | |
| Petitioners, | 0:26-CV-546 |
| vs. | MEMORANDUM AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| PAMELA BONDI, United States Attorney General, et al., | |
| Respondents. | |

The petitioners[1] are noncitizens currently detained by U.S. Immigration and Customs Enforcement (ICE). They seek a writ of habeas corpus under 28 U.S.C. § 2241. They contend their detention is unlawful because they were denied a bond hearing pursuant to 8 C.F.R. §§ 236.1(d)(1) and 1236.1(d)(1). *See* filing 1. The government responds that detention is mandatory, not discretionary, and the petitioners are not eligible to be released.

The briefing demonstrates that the petitioners' application for the writ only presents issue of law—and the government concedes this point, *see* filing 14 at 39—so the Court declines to hold a hearing. *See* § 2243. The Court will grant the petition. The government shall immediately return the petitioners to the state of Minnesota and release them from custody.

---

[1] While joint requests for habeas corpus relief are uncommon, they are not unprecedented. *E.g., Ruiz v. Norris*, 71 F.3d 1404 (8th Cir. 1995). The factual and legal considerations of this case are the same for each petitioner, who are two minor children and their parents. Neither party has presented a reason that this case should be severed, so the Court has considered the petitioners' claims jointly.

BACKGROUND

The material facts are not in dispute. The petitioners include a pregnant woman, her husband, and their two minor children. The woman was taken into custody by ICE after she was pulled over on her way to work. *See* filing 1 at 2. ICE then went to the woman's home and apprehended her husband and sons. The petitioners are citizens of Ecuador and each have a pending asylum petition. Filing 1 at 3-4. They have been residing in Hopkins, Minnesota, for at least three years and have no criminal convictions. *See* filing 1 at 4, 11.

The government asserts the petitioners are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), and are ineligible for a bond hearing. *See* filing 14 at 6; *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The petitioners now seek a writ of habeas corpus ordering the government to immediately release them from custody.

STANDARD OF REVIEW

The writ of habeas corpus is available to every individual detained in the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2008); *Boumediene v. Bush*, 553 U.S. 723, 742-43 (2008). Historically, the protections of the writ have been strongest when reviewing the legality of executive detention. *I.N.S. v. St. Cyr,* 533 U.S. 289, 301 (2001). The Great Writ is "a vital instrument" to protect individual liberties, and is an essential check on abuses of government power. *Boumediene*, 553 U.S. at 743.

Except during periods of formal suspension, federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty." *Id.* at 745 (quoting *Hamdi*, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." *Id.* at

744 (quoting The Federalist No. 84 (Alexander Hamilton)).[2]

Section 2241 confers federal jurisdiction to hear statutory and constitutional challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *accord Shah v. Reno*, 184 F.3d 719, 724 (8th Cir. 1999). Petitioners must show they are in custody in violation of the Constitution or laws of the United States. *See* § 2241(c)(3); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025). Release is the typical remedy for unlawful executive detention. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## DISCUSSION

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that unless the alien has committed a specifically listed crime, the Attorney General may detain the alien *or* release the alien on bond or conditional parole. Section 1225(b)(2), on the other hand, provides that detention is mandatory for "an alien who is an applicant for admission."

---

[2] "[C]onfinement of the person, by secretly hurrying him to jail, where his sufferings are unknown or forgotten, is a less public, a less striking, and therefore a *more dangerous engine* of arbitrary government." The Federalist No. 84 (quoting 1 William Blackstone, Commentaries 136) (emphasis in original).

The writ of habeas corpus, and the Fifth and Fourteenth Amendments, prevent tyrannical governments from making "scape goats [sic] of the weak, or of helpless political, religious, or racial minorities and those who differed, who would not conform and who resisted tyranny." *See Chambers v. Florida*, 309 U.S. 227, 236 (1940). The right of habeas corpus, among others, is an "assurance against ancient evils," preserving the "blessings of liberty." *Id.* at 237 n.10.

The petitioners argue detention is unlawful because they have no criminal history and were apprehended within the United States; thus, they are due the process outlined in § 1226(a). Noncitizens detained under § 1226(a) must receive bond hearings at the outset of detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). The government, however, asserts that the petitioners are actually in custody under § 1225(b)(2), which mandates detention. The issue in this case is which statute applies to the petitioners— § 1226(a) or § 1225(b)(2).

### *Statutory Framework and Enforcement*

Section 1226 "sets out the default rule" for detaining noncitizens "already present in the United States." *Jennings,* 583 U.S. at 303. It permits the Attorney General, in her discretion, to detain a noncitizen pending his removal from the United States. § 1226(a). Generally, noncitizens detained pending a removal proceeding are entitled to a bond hearing, unless they committed one of the listed crimes in § 1226(c). *See Jennings*, 583 U.S. at 306.

On the other hand, § 1225 involves inspections by immigration officers, expedited removal of inadmissible arriving aliens, and which "applicants for admission" are eligible for a hearing. Generally, § 1225 describes the process that "begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* at 287. While not limited to designated ports of arrival, *see* § 1225(a)(1), the statute generally describes the inspection process that occurs when a noncitizen enters the United States. § 1225; *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (hereinafter "*Rodriguez I*").

Longstanding agency practice has treated noncitizens who entered without inspection and were apprehended while residing in the United States as subject to § 1226(a). *See id.* at 1260; Detention and Removal of Aliens, 62

4

Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). But beginning in 2022, some immigration judges in Tacoma, Washington, began denying bond hearings to that group, instead treating them as subject to mandatory detention under § 1225(b)(2)(A). *See Rodriguez I*, 779 F. Supp. 3d at 1244. This departure from the norm was widely adopted by the current administration this summer. *See* Memorandum from Rodney S. Scott, Comm'r of U.S. Customs & Border Prot., Detention of Applicants for Admission (July 10, 2025) (https://www.cbp.gov/document/foia-record/detention-applicants-admission) [https://perma.cc/56W9-TNPW] ("revising" the agency's legal position from its "historical" treatment of certain noncitizens).

In September, the Board of Immigration Appeals issued a precedential opinion approving this "new" understanding of § 1225. *See Yajure Hurtado*, 29 I. & N. Dec. 216. The BIA held that the "plain text" of § 1225 applies to any noncitizen "present in the United States" who has not been inspected or admitted. *See id.* This interpretation has been challenged in hundreds of lawsuits across the country.[3]

The issue in this case is whether the petitioners are subject to § 1225(b)(2)(A)'s mandatory detention provision, or whether they fall under the default provision in § 1226(a).

## *Plain Text*

As in all cases involving questions of statutory interpretation, the Court begins by giving the words in the statute their ordinary and common meaning, unless otherwise defined. *E.g. United States v. Smith*, 756 F.3d 1070, 1073 (8th Cir. 2014). The Court considers whether the meaning is unambiguous when

---

[3] The BIA opinion is not binding on this Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). Nor is it persuasive.

"read in its proper context," *id.*, including both the specific context in which the language is used, and the broader context of the statute as a whole. *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 807 (8th Cir. 2021).

Under § 1225(a)(1),

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

And under § 1225(b)(2)(A),

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding].

"Admission" is defined in a different part of the statutory scheme. "Admission" means, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A).

The government argues that people apprehended while residing in the United States, who have never effected a lawful entry, are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A). But the plain text of § 1225(b)(2)(A) only applies to noncitizens "seeking admission." And more specifically, based on the definition in § 1101, § 1225 applies to

6

noncitizens seeking *lawful* admission. Noncitizens who entered the country unlawfully are not seeking lawful admission. *See Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *5 (S.D.N.Y. Nov. 26, 2025).

The government asserts that the statute does not impose any requirement that a person be affirmatively seeking admission. *See* filing 14, *passim*. It argues that a person who is an "applicant for admission" is necessarily "seeking admission," as anyone who "applies" for something is naturally "seeking" it. Filing 14 at 20. But if that's the case, the phrase "seeking admission" need not appear in the statute at all. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240, 2025 WL 2782499, at *21 (W.D. Wash. Sept. 30, 2025) (hereinafter "*Rodriguez II*"); *Bartenwerfer v. Buckley*, 598 U.S. 69, 78 (2023) (when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, we generally take the choice to be deliberate" (cleaned up)). By including the phrase "seeking admission," Congress narrowed the scope of § 1225(b)(2)(A).

The government also asserts that the petitioners' pending asylum applications subject them to § 1225. However, because the petitioners are already in the country and were not asylum applicants at the time they arrived in the country, § 1226 governs. § 1225(b)(2); *see also Adriana M.Y.M. v. Easterwood*, No. 26-cv-213, 2026 WL 184721, at *1 (D. Minn. Jan. 24, 2026); *Mahad S. v. Noem*, No. 26-cv-476, 2026 WL 177860, at *3 (D. Minn. Jan. 22, 2026) ("Even by applying for asylum, 'a noncitizen who has already entered the United States illegally . . . cannot be said to be actively seeking lawful entry . . .'" (quoting *Barco Mercado*, 2025 WL 3295903, at *5)); *accord Quishpe-Guaman v. Noem*, No. 4:25-cv-211, 2025 WL 3201072, at *4 (S.D. Ind. Nov. 17, 2025).

The plain text of the statutory provision at issue limits mandatory detention to those noncitizens who are seeking lawful admission into the United States and come into contact with an immigration officer for inspection. It does not apply to noncitizens who are inadmissible, but have nevertheless entered the country and later encounter the government.

### *Other Canons*

The plain text of the statute alone belies the government's interpretation of § 1225(b)(2)(A). The Court need not go on. But in the interest of completeness, other canons of statutory interpretation only strengthen the petitioners' reading of the statutes.

The title of a statute can be used to help interpret the meaning of indeterminate key terms. *See Dubin v. United States*, 599 U.S. 110, 121 (2023). A statute's meaning does not always turn on the broadest imaginable definitions of its component words. *Id.* at 120. A title is "especially valuable where it reinforces what the text's nouns and verbs independently suggest." *Id.* at 121 (quoting *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment)) (cleaned up).

Even if the term "seeking admission" was indeterminate (which it is not), the title of § 1225 reinforces a narrow interpretation. The title is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *See* Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 302(a), 110 Stat. 3009-579 (1997) (providing a title for § 1225). So, § 1225 applies to "arriving aliens," *not* those who have already arrived, and provides for their expedited removal. The statute carves out protections for noncitizens seeking asylum upon arrival, but otherwise only governs the process for individuals who enter the country and are deemed inadmissible at that time.

Comparing the titles of §§ 1225 and 1226 further reinforces this understanding. The title of § 1226 is "Apprehension and detention of aliens." While § 1225's title targets "arriving aliens," § 1226 is much broader. Thus, § 1226 is the default rule, applicable to any noncitizens subject to removal proceedings, unless they can be further categorized.

Additionally, if § 1225 were as broad as the government asserts, parts of § 1226 would be rendered superfluous. *See, e.g., Rodriguez II*, 2025 WL 2782499, at *18. In particular, the recently added § 1226(c)(1)(E)—which extends the list of crimes mandating detention for aliens "present without admission or parole," *see* § 1182(a)(6)—would be wholly redundant, because *any* alien "present without admission or parole," regardless of their criminal history, would be subject to mandatory detention under the government's expansive reading of § 1225(b)(2)(A). That addition to § 1226 was promulgated just last year, demonstrating the widespread understanding by Congress and the executive branch that § 1226, not § 1225(b)(2)(A), applies to noncitizens apprehended while residing in the United States who never lawfully entered the country. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)).

Even allowing for some redundancy in statutory drafting, *see Barton v. Barr*, 590 U.S. 222, 223 (2020), it is a "cardinal rule of statutory interpretation that no provision should be construed to be *entirely* redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988) (collecting cases) (emphasis supplied). The government's interpretation of the statute cannot withstand this canon.

In support of its argument, the government cites the legislative history of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA). The government asserts Congress intended § 1225 to eliminate the "preferential treatment for noncitizens who enter the country unlawfully."

Filing 14 at 38. The government argues that it subverts the intent of the Act to treat noncitizens who entered the country unlawfully "better" (that is, not subjecting them to mandatory detention) than those who presented themselves for inspection at the border. This Court is not persuaded.

The House Report cited by the government refers to the definitions of "admission" and "admitted" under § 1101(a)(13), and comments that "the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted." H.R. Rep. No. 104-469, at 225 (1995). That same House Report did not include a mandatory detention provision for aliens who had not been lawfully admitted; rather, it "restate[d] the current provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." *Id.* at 229. Ultimately, the IIRIRA modified both §§ 1225 and 1226, but maintained the distinction between "arriving aliens" subject to § 1225's expedited removal proceedings, and the "apprehension and detentions of aliens not lawfully in the United States" subject to § 1226. H.R. Rep. No. 104-828, at 3 (1996).

In general, immigration laws

> have long made a distinction between those aliens who have come
> to our shores seeking admission . . . and those who are within the
> United States after an entry, irrespective of its legality. In the later
> instance the Court has recognized additional rights and privileges
> not extended to those who are merely on the threshold of initial
> entry. The distinction was carefully preserved in Title II of the
> Immigration and Nationality Act.

*Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (internal quotations and citations omitted). The purpose of § 1225 is clear from its title and its text—it

mandates detention of "arriving aliens" who are inspected while "seeking admission" to the country at the threshold of initial entry, with some exceptions. *See Jennings*, 583 U.S. at 287; *accord* § 1225a ("Preinspection at foreign airports"). All other noncitizens deemed inadmissible and apprehended by the government are detained subject to § 1226(a), the "default rule," unless § 1226(c) (or some other provision) applies. *See Jennings*, 583 U.S. at 288.

*Law Applicable to Petitioner*

The petitioners were not "arriving" aliens apprehended while "seeking admission" to the country. Filing 1 at 2. Therefore, the default provision in § 1226(a) applies. Based on the undisputed facts presented, the petitioners are subject to the default rule. *See Jennings*, 583 U.S. at 303.

The *overwhelming* majority of courts to consider this issue have persuasively reasoned that noncitizens who have been taken into custody while residing within the United States, who are not subject to mandatory detention under § 1226(c), are eligible for bond and bond redetermination under § 1226(a). *E.g., Castañon-Nava*, 161 F.4th at 1061; *Barco Mercado,* 2025 WL 3295903, at \*4; *see also, e.g., Sales Ambrocio v. Noem*, No. 4:25-cv-3226, 2025 WL 3295530, at \*6 (D. Neb. Nov. 25, 2025); *Barrajas v. Noem*, No. 4:25-cv-322, 2025 WL 2717650, at \*4 (S.D. Iowa Sept. 23, 2025); *Maldonado*, 795 F. Supp. 3d at 1155. This Court is in the majority.[4]

*Remedy*

Based on the foregoing, the appropriate remedy is to issue the writ and

---

[4] The government contends that the minority reading of § 1225 "has been steadily growing." *See* filing 14 at 18. The Court notes that the "steadily growing" body of cases cited by the government comes from the same handful of judges, *see* filing 14 at 6 n.5, and does not represent a trend among *new* jurists to consider the issue.

direct the government to return the petitioners to Minnesota and release them from custody, immediately. The Court need not reach the other issues presented based on the determination that § 1226 applies to the petitioner.

The government suggests that the appropriate remedy is to order a bond hearing for the petitioners, not their release. Filing 14 at 43 n.13. But an arrest warrant is a statutory prerequisite to detention under § 1226(a). *See Ahmed M. v. Bondi*, No. 25-CV-4711, 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (citing § 1226(a) (providing that an alien may be arrested and detained "[o]n a warrant issued by the Attorney General")) (collecting cases). In the absence of any suggestion that ICE had a warrant for any of the petitioners when it detained them, *see* filing 14, *passim*, the Court will grant the petition and order the petitioners to be released.

The government conceded that it removed the petitioners from the District of Minnesota in violation of a court order (filing 4). Filing 14 at 17. The government represents that it is attempting to locate the petitioners and plans to transport them back to Minnesota. *Id.* The government has requested 48 hours to "update this Court." *Id.* The government will have 48 hours to inform the Court of its strict compliance with this Order.

IT IS ORDERED:

1.  The Petition for Writ of Habeas Corpus (filing 1) is granted.

2.  The petitioners' Motion for Contempt (filing 8) is denied as moot.

3.  The government shall immediately return the petitioners to the District of Minnesota.

4.   After returning the petitioners to Minnesota, the government shall immediately release them from custody.

5.   No later than **January 26, 2026**, the government shall file a status report certifying compliance with this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated this 24th day of January, 2026.

                                        BY THE COURT:

                                        _____
                                        John M. Gerrard
                                        Senior United States District Judge